NOTICE

Decision filed 12/01/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240389-U

NO. 5-24-0389

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 15-CF-981 |
| | ) | |
| MICHAEL D. WILHELM, | ) | Honorable |
| | ) | Jeffrey S. Geisler, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE CATES delivered the judgment of the court.
Justice Barberis concurred in the judgment.
Justice Vaughan dissented.

**ORDER**

¶ 1   *Held*:   The circuit court failed to conduct an adequate inquiry into the defendant's *pro se* posttrial claim of ineffective assistance of counsel as mandated; *Krankel* counsel was ineffective; and the dismissal of the defendant's postconviction petition was outside of the scope of remand.

¶ 2   A jury found the defendant, Michael D. Wilhelm, guilty of four counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2008)) and six counts of aggravated criminal sexual abuse (720 ILCS 5/12-16(c)(1)(i), (d) (West 2008)). The defendant was sentenced to life imprisonment on the predatory criminal sexual assault of a child convictions, and he was sentenced to six years' imprisonment on the aggravated criminal sexual abuse convictions.

1

¶ 3    The defendant filed a direct appeal and raised multiple issues including an argument that the circuit court's decision to deny the defendant's posttrial allegation of ineffective assistance of counsel had no basis in the record. The case was remanded to the circuit court to conduct an adequate *Krankel*[1] inquiry into the defendant's *pro se* posttrial claim of ineffective assistance of counsel as set forth in *People v. Wilhelm*, 2020 IL App (4th) 170008-U.[2] The appellate court retained jurisdiction on the remaining issues.

¶ 4    On remand, the circuit court held a first-stage *Krankel* inquiry and determined possible neglect by trial counsel. New counsel, Caleb Brown (*Krankel* counsel), was appointed to investigate the defendant's posttrial ineffective assistance claims. Over two years later, *Krankel* counsel filed an "amended" postconviction petition[3] under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2024)) in lieu of filing a posttrial motion for new trial and proceeding with the second stage evidentiary hearing pursuant to *Krankel* and its progeny. The State filed a motion to dismiss the amended postconviction petition and the circuit court dismissed the defendant's postconviction petition without conducting an evidentiary hearing.

¶ 5    On appeal, the defendant raises four arguments, two of which were raised during the initial appeal and not addressed as the case was remanded for an adequate *Krankel* inquiry. Those two claims are that the State failed to prove at trial that the defendant was guilty of committing predatory criminal sexual assault against one of the victims, and that the circuit court erroneously allowed the introduction of acts allegedly committed by the defendant 20 years before the charged offenses when he was a minor. The defendant additionally argues in this appeal that the circuit

---

[1]*People v. Krankel*, 102 Ill. 2d 181 (1984).

[2]Macon County was located in the Fourth Judicial District when *People v. Wilhelm*, 2020 IL App (4th) 170008-U, was issued. As of January 1, 2022, the judicial district boundaries changed in Illinois. Macon County is now located in the Fifth Judicial District for this appeal.

[3]The defendant had not filed a *pro se* postconviction petition and no other postconviction petition was on file prior to *Krankel* counsel filing an amended postconviction petition.

court committed reversible error on remand where it violated the appellate court's mandate by conducting postconviction proceedings rather than *Krankel* proceedings, and that *Krankel* counsel rendered deficient representation. For the following reasons, we reverse the postconviction dismissal, remand with directions, and direct the circuit court to appoint new *Krankel* counsel.

¶ 6                                    I. BACKGROUND

¶ 7     On August 18, 2015, the defendant was charged by information with 10 counts related to the sexual abuse of defendant's stepchildren. Three of the counts were predatory criminal sexual assault of a 12-year-old (C.E.) and one count of aggravated criminal sexual abuse of C.E., that occurred between August 1, 2009, and January 31, 2010. The defendant was also charged with predatory criminal sexual assault of an 11-year-old (S.E.) and two counts of aggravated criminal sexual abuse to S.E., that occurred between June 1, 2009, and January 31, 2010. The final three counts were aggravated criminal sexual abuse of a 14-year old (J.E.), that occurred between June 1, 2009, and January 31, 2010. The defendant was 33 years old when he allegedly committed the acts in the home where the minors resided.

¶ 8     The State filed a motion *in limine* seeking to present testimony concerning allegations of prior acts of abuse by the defendant that allegedly occurred when the defendant was 13 and 15 years old. The circuit court was troubled that some of the alleged incidents occurred 24 to 26 years prior to the acts alleged in this case. However, the circuit court found that those older allegations were similar to the allegations described in the information and granted the State's motion.

¶ 9     At trial, the State called the alleged victims, C.E., S.E., and J.E., to testify to the sexual abuse by the defendant. J.D., D.F., and C.W., although not named in the criminal charges, testified at trial as propensity witnesses to the defendant's prior bad acts. Trial testimony included that the defendant lived with the alleged victims and their mother in the late summer and fall of 2009. The

3

defendant's nephew, the defendant's nephew's wife, and another man who would babysit the children lived off and on in the home as well during that time.

¶ 10    Videotaped statements of C.E. and S.E. taken from 2010 were published at trial and admitted into evidence. During S.E.'s 2010 interview, she did not reveal that the defendant had touched her vagina with his penis. S.E.'s trial testimony, however, included that the defendant had done so. At trial, S.E. explained that the defendant had threatened to kill her family if she told anyone about the defendant's conduct. S.E. had believed the defendant's threat and further testified that she was scared to tell anyone about what had happened. C.E. testified to the many times the defendant would touch her vagina, penetrate her vagina and anus, and have C.E. give the defendant oral sex. J.E. described how the defendant started his abuse of her by using baby oil to penetrate her anus, using a condom. She indicated this conduct continued, with the defendant also penetrating her vagina, but always using a condom. She was afraid to tell anyone, fearing the defendant would hurt her.

¶ 11    A jury convicted the defendant on all counts, and the defendant was sentenced to life imprisonment on the three predatory criminal sexual assault charges and six years' imprisonment on the remaining aggravated criminal sexual abuse charges, to run consecutively. The defendant subsequently filed a *pro se* motion to vacate a guilty plea and a *pro se* motion for a reduction of sentence using fill-in-the-blank form pleadings. Both motions asserted that trial counsel provided ineffective assistance, without written explanation by the defendant.

¶ 12    The circuit court held a hearing to address the defendant's *pro se* motions. The defendant explained that trial counsel was ineffective for failing to subpoena a neighbor and the defendant's son. The defendant believed that those witnesses would have testified that the defendant was not living in the household with the minors during the time frame alleged by the State. Trial counsel

4

responded to the defendant's allegations and acknowledged that he had a difficult time finding some of the witnesses and that he "did the best we could with the information we had." The circuit court found that trial counsel was effective and the defendant's *pro se* motions were stricken, as the defendant had not pled guilty and the defendant was represented by counsel who had filed a motion to reconsider the defendant's sentence. The circuit court subsequently heard argument on the defendant's motion to reconsider his sentence and denied the motion.

¶ 13    The defendant appealed his convictions and sentence. He argued in his initial direct appeal that the State failed to prove him guilty of committing predatory criminal sexual assault against one of the victims; the circuit court erroneously allowed the introduction of acts allegedly committed by the defendant when he was a minor and 20 years before the charged offenses; the circuit court improperly ruled on the merits of the defendant's ineffective assistance of counsel claim instead of determining whether the appointment of new counsel was necessary; and section 11-1.40(b)(1.2) of the Criminal Code of 2012 (720 ILCS 5/11-1.40(b)(1.2) (West 2012)) was facially unconstitutional. See *Wilhelm*, 2020 IL App (4th) 170008-U.

¶ 14    The Fourth District appellate court agreed with the defendant that the circuit court had not conducted an adequate inquiry into the defendant's claim of ineffective assistance of counsel. The appellate court remanded the case with directions to the circuit court to conduct an adequate *Krankel* inquiry into the defendant's *pro se* posttrial claim of ineffective assistance of counsel. The circuit court was to inquire into the factual basis of the defendant's posttrial claim of ineffective assistance to determine whether the defendant's *pro se* allegations showed possible neglect of the case. If possible neglect was shown, then new counsel was to be appointed. Because the appellate court determined that a new *Krankel* inquiry was required, the remaining arguments on appeal were not considered at the time of remand. Rather, the appellate court retained jurisdiction over

5

the defendant's remaining three claims of error. The appellate court further opined that if the defendant was not satisfied with the outcome of the proceedings on remand, then the defendant would also be allowed to raise any supplementary claims in a subsequent appeal relating to the proceedings on remand.

¶ 15    On January 22, 2021, the circuit court conducted a first-stage *Krankel* inquiry where the defendant appeared *pro se*. The defendant claimed that trial counsel provided ineffective assistance for failing to present witnesses or documentation to prove that the defendant did not live with the victims during the time frames of the alleged offenses as set forth in the information. Specifically, the defendant claimed his nephew would have testified that the defendant was not residing in the household during the relevant time period and that the defendant had moved out; the defendant's son would have potentially testified to the defendant's weekend visitation schedule at the defendant's home and that the defendant's stepdaughters did not live with him; and that trial counsel failed to introduce the order of protection or dissolution of marriage documents which would have shown that the defendant had moved from his stepdaughters' home.

¶ 16    In addition to the defendant's claim that he did not live in the home during the relevant time period, the defendant raised additional claims of ineffective assistance of counsel during the first stage of the *Krankel* inquiry before the trial court. The defendant claimed that trial counsel failed to introduce a report written by Jennifer Inness with the Department of Children and Family Services (DCFS). The report purportedly included a statement by Inness that she believed that the stepchildren had been coached in their allegations against the defendant. The defendant also claimed that trial counsel did not bring out that a propensity witness, J.D., received a favorable plea deal in a driving under the influence (DUI) case in exchange for her testimony.

¶ 17    Trial counsel responded to the defendant's allegations that trial counsel failed to present alibi evidence. Trial counsel argued that the defendant's nephew would not have testified that the defendant lived in a separate residence as his stepdaughters during the entirety of the time periods alleged in the criminal charges. Trial counsel believed that the defendant's son would have provided similar testimony but could not recall whether he had spoken to the defendant's son or not. Additionally, trial counsel claimed that he had considered introducing the defendant's dissolution and order of protection documents as evidence at trial, but the documents were not contrary to witness testimony, nor did they prove where the defendant had been residing.

¶ 18    Trial counsel also responded to the claims related to his failure to attack the credibility of the children's testimony. Trial counsel testified that he had considered Inness's DCFS report where Inness "strongly suspected" that the children had been coached. He did not believe that a witness with a strong suspicion of something was admissible as evidence. Trial counsel acknowledged that he could not recall J.D.'s testimony, but he believed that J.D. may have accepted a plea after she testified against the defendant.

¶ 19    The circuit court determined that the defendant's ineffective assistance claims demonstrated possible neglect of his case by trial counsel, and appointed *Krankel* counsel on January 22, 2021. The circuit court informed *Krankel* counsel that he was allowed to prepare any motion that he thought was proper in the case and scheduled a status conference for March 30, 2021.

¶ 20    During the initial status conference, *Krankel* counsel requested additional time to prepare his motion, and a continuance was granted. Subsequently, numerous status conferences were held as *Krankel* counsel requested several unopposed continuances to meet with witnesses and to finish drafting a pleading. During a status conference held on January 4, 2022, *Krankel* counsel indicated

7

that he was working on a postconviction petition and requested additional time to meet with witnesses to obtain affidavits. The circuit court granted his request.

¶ 21    On September 11, 2023, the defendant filed an "Amended Petition for Post-Conviction Relief" along with a copy of the defendant's petition for dissolution of marriage as an exhibit and a supporting memorandum. *Krankel* counsel acknowledged in the postconviction petition that the case had been remanded to evaluate the defendant's posttrial claim of ineffective assistance of counsel, that the circuit court had found possible neglect by trial counsel, and that new counsel was appointed to prepare for a full *Krankel* hearing. The postconviction petition only addressed allegations that the defendant's constitutional right to effective assistance of counsel had been substantially violated. Specifically, the defendant claimed that he had received ineffective assistance of counsel where trial counsel failed to introduce evidence that the defendant had not shared a residence with his stepdaughters during a significant portion of the date range included in the criminal allegations; trial counsel prevented the jury from hearing information on a plea agreement entered into by one of the State's witnesses; and trial counsel failed to meet with the defendant or provide adequate advice to prepare the defendant for trial. Except for the copy of the defendant's petition for dissolution of marriage, *Krankel* counsel did not attach supporting documentation to the postconviction petition.

¶ 22    *Krankel* counsel did file a Supreme Court Rule 651(c) certificate. He claimed to have consulted with the defendant, examined the record, and claimed that he "made amendments to the petition filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." The record does not include a *pro se* postconviction petition.

¶ 23    On December 8, 2023, the State filed a motion to dismiss the defendant's amended petition for postconviction relief. The State's response included that the defendant filed a postconviction

8

petition while his direct appeal was pending. The State asserted that the defendant had not made a substantial showing of a constitutional violation due to ineffective assistance of counsel. The defendant had alleged that he was not residing with his stepchildren from September 4, 2009, through January 21, 2010, but that time frame did not encompass the entire time period alleged in the information. The State argued that it was not required to prove that the offenses charged were committed on a particular date, only that the acts had occurred during the time frame alleged. The State also argued that the defendant failed to demonstrate that trial counsel was ineffective for failing to question a witness on a plea agreement and for failing to communicate or meet with the defendant to prepare for trial where the defendant's arguments were nonspecific, conclusory, and not supported by facts.

¶ 24    On March 7, 2024, the circuit court held a hearing on the State's motion to dismiss. During *Krankel* counsel's argument he stated that "the question is not would these have won the trial, but the question is would it have assisted the defense and would a reasonable attorney have sought those things in executing the defense." *Krankel* counsel additionally argued that "[i]f any one of these things had been the only claim of an ineffective assistance of counsel and it stood on its own, I would more understand the State's argument, but when you put all of these together I think it's certainly rises to the level of a Constitutional violation in effective assistance of counsel."

¶ 25    The circuit court considered the time frames alleged in the criminal information. The defendant had asserted in his postconviction petition that he lived in a different residence than his stepchildren from September 4, 2009, through January 21, 2010. The allegations regarding C.E. occurred between August 1, 2009, and January 31, 2010, and the allegations involving S.E. and J.E. took place between June 1, 2009, and January 31, 2010. The circuit court found that the

defendant's arguments pertaining to his residence, if taken as true, did not account for the entirety of the time frames alleged in any of the 10 counts charged against the defendant.

¶ 26 In regard to the allegation of ineffective assistance of counsel for not thoroughly questioning J.D. on a plea agreement made in a DUI case, the circuit court found that the defendant had not made a specific assertion as to why this was a constitutional violation, and the argument was conclusionary. Therefore, the allegation was not sufficient to raise a constitutional violation. The circuit court also found that the defendant's claim that trial counsel failed to adequately communicate was a nonspecific assertion and it was a conclusion. The circuit court noted that the defendant had not raised this issue when he was asked about his complaints regarding trial counsel in the *Krankel* inquiry. Therefore, the circuit court found this allegation did not rise to a constitutional violation.

¶ 27 The circuit court considered that the defendant had initially raised an issue with trial counsel's failure to subpoena two witnesses and that the defendant indicated that he did not have any other complaints at that time. The circuit court dismissed the defendant's postconviction petition finding that the defendant's allegations did not raise a constitutional claim of ineffective assistance. This appeal followed.

¶ 28                                   II. ANALYSIS

¶ 29 On appeal, the defendant argues that the State failed to prove that the defendant was guilty beyond a reasonable doubt of committing predatory criminal sexual assault of S.E.; the circuit court erroneously allowed the introduction of acts allegedly committed by the defendant 20 years before the charged offenses when he was a minor; the circuit court committed reversible error by violating the appellate court's mandate directing *Krankel* proceedings; and that *Krankel* counsel rendered deficient representation.

¶ 30    We begin by addressing whether the circuit court committed reversible error by violating the mandate directing *Krankel* proceedings on remand. "[A] trial court must obey the clear and unambiguous directions in a mandate issued by a reviewing court." *People ex rel. Daley v. Schreier*, 92 Ill. 2d 271, 276 (1982). "[W]hen a reviewing court issues a mandate, it vests the [circuit] court with jurisdiction to take only such action as conforms to that mandate." *Schreier*, 92 Ill. 2d at 276. Furthermore, on remand, if the circuit court appoints new counsel, then the scope of the appointment should not exceed the scope of the mandate issued to the circuit court. *People v. Moore*, 389 Ill. App. 3d 1031, 1042 (2009).

¶ 31    If an order issued by the circuit court is outside of the scope of its authority, the order is void for lack of jurisdiction. *Schreier*, 92 Ill. 2d at 276-77. A judgment that is void, where the circuit court lacked subject-matter jurisdiction to enter a decision, can be challenged at any time. *People v. Shelton*, 2018 IL App (2d) 160303, ¶ 35. We apply *de novo* review as to whether the circuit court complied with the appellate court's mandate. *People v. Payne*, 2018 IL App (3d) 160105, ¶ 9.

¶ 32    The Fourth District in *Wilhelm*, 2020 IL App (4th) 170008-U, directed as follows:

> "[W]e remand for an adequate *Krankel* inquiry, at which the trial court should inquire into the factual basis of defendant's claim to decide whether defendant's *pro se* allegations show possible neglect of the case. If possible neglect is shown, 'new counsel should be appointed.' (Internal quotation marks omitted.) *Ayres*, 2017 IL 120071, ¶ 11. If not, defendant's claim may be denied. *Id.*
>
> Because we conclude a new *Krankel* inquiry is required, we need not consider defendant's other arguments on appeal. *People v. Bell*, 2018 IL App (4th) 151016, ¶ 37, 100 N.E.3d 177 ('Depending on the result of the *** *Krankel* inquiry, defendant's other claims may become moot.'). While we are 'remanding for further proceedings on defendant's *pro se* claim of ineffective assistance of counsel,' we retain jurisdiction over defendant's other claims. *People v. Wilson*, 2019 IL App (4th) 180214, ¶ 26, 137 N.E.3d 868. If 'defendant is not satisfied with the outcome of the proceedings on remand, he may again appeal and raise any supplementary claims relating to the remand proceedings, and the State may have an opportunity to respond to those claims.' *Id.*" *Wilhelm*, 2020 IL App (4th) 170008-U, ¶¶ 17-18.

11

¶ 33 A *Krankel* proceeding creates a record establishing a factual basis for the defendant's *pro se* claim of ineffective assistance of counsel. *In re Johnathan T.*, 2022 IL 127222, ¶ 43. The purpose of a *Krankel* proceeding is to facilitate the circuit court's "full consideration" of a defendant's ineffective assistance of counsel claims and to limit the issues on appeal. *People v. Boose*, 2025 IL App (4th) 231467, ¶ 37.

¶ 34 The *Krankel* proceeding occurs in two stages. *People v. Downs*, 2017 IL App (2d) 121156-C, ¶ 43. In the first stage, the circuit court considers the factual bases of a defendant's *pro se* claims of ineffective assistance of counsel. *Downs*, 2017 IL App (2d) 121156-C, ¶ 43. The circuit court may deny the defendant's *pro se* motion if the defendant's claims lack merit or if the circuit court determines that the claims pertain only to matters of trial strategy. *Downs*, 2017 IL App (2d) 121156-C, ¶ 43. If the defendant's claims demonstrate possible neglect of the case by trial counsel, then the circuit court will appoint new counsel. *Downs*, 2017 IL App (2d) 121156-C, ¶ 43.

¶ 35 The second stage of the *Krankel* proceeding consists of an adversarial and evidentiary hearing on the defendant's claims of ineffective assistance of trial counsel. *Downs*, 2017 IL App (2d) 121156-C, ¶ 43. The defendant is represented by the new counsel, *Krankel* counsel, during the hearing on the *pro se* ineffective assistance of counsel claims. *People v. Roddis*, 2020 IL 124352, ¶ 36.

¶ 36 *Krankel* counsel independently evaluates the defendant's claims of ineffective assistance of trial counsel. *People v. Moore*, 207 Ill. 2d 68, 78 (2003). *Krankel* counsel's investigation is not limited to the ineffective assistance of counsel claims raised by the *pro se* defendant during the first stage. *People v. Harkey*, 2025 IL App (4th) 230523, ¶ 78. *Krankel* counsel should review the entire record, including pretrial and trial transcripts, and meet with the defendant regarding any potential claims of ineffective assistance of counsel. *Harkey*, 2025 IL App (4th) 230523, ¶ 78. The

role of *Krankel* counsel is limited to investigating the defendant's *pro se* claims of ineffective assistance of trial counsel and does not extend to pursuing other claims of error. *Harkey*, 2025 IL App (4th) 230523, ¶ 77.

¶ 37 Every attorney, including those appointed as counsel during the initial stage of the *Krankel* process, bears an ethical responsibility to refrain from filing frivolous pleadings. *Downs*, 2017 IL App (2d) 121156-C, ¶ 48. If *Krankel* counsel cannot find any valid claims of ineffective assistance by trial counsel, counsel should ask the trial court for permission to withdraw from representing the defendant. *Downs*, 2017 IL App (2d) 121156-C, ¶ 51. However, if *Krankel* counsel determines that the defendant's claims of ineffective assistance have merit, then *Krankel* counsel should file a motion for a new trial, alleging those claims. *Harkey*, 2025 IL App (4th) 230523, ¶ 79.

¶ 38 If a motion for new trial is filed by *Krankel* counsel, the defendant is entitled to relief if the circuit court determines at an adversarial evidentiary hearing conducted pursuant to *Krankel* that a claim of ineffective assistance of trial counsel satisfied both prongs of the requirements of the *Strickland*[4] analysis. *Boose*, 2025 IL App (4th) 231467, ¶ 37. Thus, the defendant must demonstrate that trial counsel's performance was deficient where it fell below an objective standard of reasonableness, and the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687-88.

¶ 39 A "*Krankel* motion is not a substitute for a postconviction petition." *People v. Patrick*, 2011 IL 111666, ¶ 39. The postconviction proceeding under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2024)) is also not a substitute for an appeal, but rather, it is a collateral attack on a final judgment. *People v. Edwards*, 2012 IL 111711, ¶ 21. The defendant has an opportunity through a postconviction proceeding to assert any constitutional claims that

---

[4]*Strickland v. Washington*, 466 U.S. 668 (1984).

could not have been raised on direct appeal. *People v. Harris*, 224 Ill. 2d 115, 128 (2007). Any claims that could have been raised on direct appeal, but were not raised, would be defaulted in a postconviction proceeding, and any claims which were decided on direct appeal are barred by *res judicata*. *People v. English*, 403 Ill. App. 3d 121, 129 (2010). A defendant who fails to request a posttrial ineffective assistance of counsel claim under *Krankel* may, nonetheless, raise constitutional claims of ineffective assistance under the Act, but the same cannot be said for postconviction petitioners. *People v. Custer*, 2019 IL 123339, ¶ 37. Specifically, there is no recourse for postconviction petitioners to raise claims of ineffective assistance of counsel in a *Krankel* proceeding, as *Krankel* does not extend to the Act. *Custer*, 2019 IL 123339, ¶ 46.

¶ 40 The Act provides a three-step process where a convicted defendant may assert a substantial denial of his or her constitutional rights which occurred in the original trial or sentencing hearing. *People v. Towns*, 182 Ill. 2d 491, 502 (1998). During the first stage of postconviction proceedings, the defendant has a "low threshold" and only needs to provide sufficient facts to present the gist of a constitutional claim. *People v. Brown*, 236 Ill. 2d 175, 184 (2010). During the second stage of postconviction proceedings, the circuit court may appoint counsel to an indigent defendant. *People v. Domagala*, 2013 IL 113688, ¶ 33. The State may file an answer or move to dismiss at this stage. 725 ILCS 5/122-5 (West 2024). The circuit court then determines whether the defendant made a "substantial showing of a constitutional violation" based on the postconviction petition and supporting documentation. (Internal quotation marks omitted.) *Domagala*, 2013 IL 113688, ¶ 33. The postconviction petition is dismissed if no showing of a constitutional violation is made by the defendant. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). When the circuit court finds that the petition sets forth a substantial showing of a constitutional violation, the petition advances to the

third stage where the circuit court conducts an evidentiary hearing. *People v. House*, 2021 IL 125124, ¶ 17.

¶ 41    In this case, the circuit court complied with the first stage of a *Krankel* proceeding, held an inquiry with the defendant, determined possible neglect by trial counsel, and appointed *Krankel* counsel. After investigating the defendant's claims of ineffective assistance of trial counsel, *Krankel* counsel did not attempt to withdraw from representing the defendant. Instead, *Krankel* counsel spent years investigating the defendant's claims and filed an "amended" postconviction petition, even though the defendant never filed an initial *pro se* postconviction petition. The second stage of the *Krankel* proceeding, the evidentiary adversarial hearing with appointed *Krankel* counsel representing the defendant, never occurred. Therefore, *Krankel* counsel never had the opportunity to introduce evidence that would have supported the defendant's motion for a new trial, or, alternatively, create a record which fully addressed the defendant's ineffective assistance of counsel claims to narrow the issues on direct appeal. As such, the circuit court did not comply with the appellate court's mandate " 'remanding for further proceedings on defendant's *pro se* claim of ineffective assistance of counsel.' " *Wilhelm*, 2020 IL App (4th) 170008-U, ¶ 18 (quoting *People v. Wilson*, 2019 IL App (4th) 180214, ¶ 26). On remand, the hearing on the *pro se* ineffective assistance of counsel claim never occurred.

¶ 42    In *Wilson*, the defendant appealed after his case had previously been remanded to conduct a hearing in accordance with *Krankel*. *Wilson*, 2019 IL App (4th) 180214, ¶ 2. The defendant in *Wilson* claimed that the circuit court erred by deciding the merits of the defendant's ineffective assistance of counsel claims at an initial hearing. *Wilson*, 2019 IL App (4th) 180214, ¶ 21. The defendant requested an evidentiary hearing with new counsel on his claim of ineffective assistance of counsel claiming that he had established possible neglect of his case. *Wilson*, 2019 IL App (4th)

15

180214, ¶ 4. The State conceded on appeal that the circuit court should allow new "appointed counsel the opportunity to investigate defendant's claim of ineffective assistance and take whatever action counsel deems appropriate thereafter." *Wilson*, 2019 IL App (4th) 180214, ¶ 17. The Fourth District considered that "[w]here a trial court's inquiry discloses 'possible neglect of the case,' it should appoint new counsel to independently investigate and represent the defendant at a separate hearing." *Wilson*, 2019 IL App (4th) 180214, ¶ 20. The matter was remanded for further proceedings on defendant's *pro se* claim of ineffective assistance of trial counsel, while retaining jurisdiction on the defendant's other claims raised on appeal. *Wilson*, 2019 IL App (4th) 180214, ¶ 25. The defendant, in *Wilson*, was allowed to file an additional appeal and raise any supplementary claims relating to the remand proceedings if he was not satisfied with the outcome on remand. *Wilson*, 2019 IL App (4th) 180214, ¶ 26.

¶ 43    The Fourth District in *Wilhelm*, 2020 IL App (4th) 170008-U, considered *Wilson*, 2019 IL App (4th) 180214, when it directed the circuit court to conduct further proceedings on defendant's *pro se* claims of ineffective assistance of counsel. Because the circuit court dismissed the defendant's claim without proceeding to an evidentiary hearing as allowed by *Krankel*, and as directed by the Fourth District's mandate in *Wilhelm*, 2020 IL App (4th) 170008-U, the circuit court's order of dismissal pursuant to the second stage of the postconviction proceedings was outside of its authority and void. Therefore, we reverse the order granting the dismissal of the defendant's ineffective assistance of counsel claims raised in the defendant's amended postconviction petition and allow the defendant to withdraw his postconviction petition. Further, we remand this case for further proceedings as originally mandated by the Fourth District appellate court and order that the circuit court proceed with the defendant's *pro se* claims of ineffective

16

assistance of counsel and the filing of a proper posttrial motion in accordance with *Krankel*, 102 Ill. 2d 181, and its progeny, if required.

¶ 44     The defendant additionally argues that *Krankel* counsel provided ineffective assistance of counsel by filing the postconviction proceeding. The defendant is not guaranteed effective assistance of counsel as contemplated by the sixth amendment in a postconviction proceeding. *People v. Moore*, 389 Ill. App. 3d 1031, 1043 (2009). Postconviction counsel is only required to provide a reasonable level of assistance under the Act. *People v. Turner*, 187 Ill. 2d 406, 410 (1999). This standard of review under the Act is very different than the required level of assistance due the defendant pursuant to a *Krankel* claim. As previously noted, the defendant may raise ineffective assistance of counsel claims against *Krankel* counsel, and those claims are governed by the standards of representation set forth in *Strickland*, 466 U.S. 668. *People v. Cherry*, 2016 IL 118728, ¶ 29. *Krankel* counsel was not appointed in this case to serve as postconviction counsel. Therefore, he should have provided effective assistance under the scope of his appointment. We review ineffective assistance of counsel claims *de novo*. *In re Harlin H*., 2022 IL App (5th) 190108, ¶ 78.

¶ 45     The defendant must demonstrate that *Krankel* counsel's performance was deficient where it fell below an objective standard of reasonableness, and the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687-88. In determining whether the defendant was prejudiced, the defendant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Cherry*, 2016 IL 118728, ¶ 30. A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

17

¶ 46    *Krankel* counsel's performance was deficient where he spent years drafting an "amended" postconviction petition, even though the record does not contain an original *pro se* postconviction petition, abdicating his appointed role as *Krankel* counsel. As a result of *Krankel* counsel's handling of this case, the defendant did not receive an evidentiary hearing after the circuit court conducted the first stage of the *Krankel* inquiry and determined possible neglect by trial counsel.

¶ 47    Furthermore, the defendant's case would not have been dismissed without an evidentiary hearing, but for *Krankel* counsel's misguided attempt at pursuing postconviction relief under the Act. The resulting dismissal of the postconviction petition occurred before the appellate court addressed the remaining issues raised on direct appeal. *Krankel* counsel prejudiced the defendant as the Act allows a defendant to file only one postconviction petition without leave of the court. See 725 ILCS 5/122-1(f) (West 2024). "Successive petitions are highly disfavored." *People v. Figueroa*, 2022 IL App (1st) 172390-B, ¶ 22. An initial postconviction petition must not be "frivolous or patently without merit" but the standard for a successive postconviction petition has a higher burden and the defendant must meet a "cause and prejudice" test. *Figueroa*, 2022 IL App (1st) 172390-B, ¶ 22 (citing *Edwards*, 2012 IL 111711, ¶¶ 24-29). We therefore find that *Krankel* counsel's representation fell below an objective standard of reasonableness, that he acted outside of the scope of his appointment and caused prejudice to the defendant. In summary, *Krankel* counsel provided ineffective assistance of counsel.

¶ 48    The dissent sees no difference between the filing of the postconviction petition and a posttrial motion. Indeed, the dissent claims that if *Krankel* counsel's amended petition had been entitled "amended *Krankel* petition" instead of "amended postconviction petition" and contained the same claims, no error could be found. Such a claim fails to recognize the significant differences in counsel's role pursuant to a *Krankel* appointment versus counsel's representation under the Act.

18

The dissent also ignores the difference between the common law *Krankel* procedure that has been developed through the courts to allow for a challenge based on ineffective assistance of counsel. As previously noted, the Act (725 ILCS 5/122-1 *et seq.* (West 2024)) is a statutory scheme that allows a defendant to challenge his conviction or sentence on constitutional grounds after their direct appeals have been completed. Contrary to the dissent's remarks that the majority's argument is "couched in speculation related to a potential future and unfiled pleading" (*infra* ¶ 81), the reality is that by filing a postconviction petition, the defendant's opportunity to proceed with a constitutional claim after the conclusion of his direct appeal has been jeopardized. Successive petitions are highly disfavored under the Act and the defendant must meet the "cause and prejudice" test. *Figueroa*, 2022 IL App (1st) 172390-B, ¶ 22. Moreover, defendant was denied the opportunity to proceed with the adversarial hearing contemplated by the *Krankel* process where *Krankel* counsel finds a meritorious claim to present in a posttrial motion. Instead, the State was allowed to file a motion to dismiss, which would not have been allowed had the *Krankel* procedure been afforded to the defendant.

¶ 49    In *People v. Custer*, 2019 IL 123339, our supreme court had the opportunity to review the differences between the common law *Krankel* procedure developed by Illinois courts and the Post-Conviction Hearing Act. In a matter of first impression, the court first noted that *Krankel* provides "a means for defendants to assert posttrial claims that *trial* counsel provided ineffective assistance." (Emphasis in original.) *Custer*, 2019 IL 123339, ¶ 25. In *Custer*, the defendant claimed inadequate representation by appointed postconviction counsel and sought to extend a *Krankel* inquiry to postconviction counsel. The supreme court discussed the policies and case law underlying the Act. First, the court acknowledged that the Act was adopted "to create a mechanism for criminal defendants to make collateral attacks on judgments by claiming a substantial violation

19

of a constitutional right at trial." *Custer*, 2019 IL 123339, ¶ 29. Further, "the sixth amendment right to counsel does not extend to postconviction petitioners"; therefore, counsel is afforded under the Act only as a matter of legislative grace. *Custer*, 2019 IL 123339, ¶ 30. Therefore, the "required quantum of assistance has been judicially deemed to be a 'reasonable level,' a standard that is significantly lower than the one mandated at trial by our state and federal constitutions." *Custer*, 2019 IL 123339, ¶ 30. In refusing to extend the *Krankel* inquiry to challenge the effectiveness of postconviction counsel, the supreme court noted that, "[w]hile appeals from posttrial motions require review of a myriad of claims, the bases for appeals in postconviction cases are far more limited, encompassing only substantial issues of constitutional proportion that could not have been presented on direct appeal." *Custer*, 2019 IL 123339, ¶ 40. Here, the supreme court acknowledged the limitations of the Act, as well as the reduced level of legal assistance required by the Act. Because of these critical differences, the supreme court did not extend the *Krankel* inquiry to postconviction counsel. To say that one could simply change the titles to the pleadings is a failure to appreciate the differences, including the limitations, afforded by the Act. Further, it is clear by the express language of the Act that the defendant's right to bring his constitutional claims has been limited. Thus, it is a misrepresentation of the statute to conclude that the limitation on filing future petitions is "couched in speculation related to a potential future and unfiled pleading," as proffered by the dissent.

¶ 50    The State argues that the invited error doctrine bars the defendant from claiming error based on the defendant's decision to file a postconviction petition. Under the invited error doctrine, "a defendant cannot request to proceed in one manner in the trial court and later assert on appeal that the course of action used was erroneous." *People v. Smith*, 406 Ill. App. 3d 879, 886 (2010). However, void orders are not subject to the invited error rule. *People v. Brown*, 2023 IL App (2d)

20

220334, ¶ 36. As we determined that the circuit court's order is void, the invited error doctrine is not applicable in this case.

¶ 51 The dissent also claims that the invited error doctrine is applicable here, repeating its argument that the circuit court's order was not void for lack of jurisdiction. In support of this argument, the dissent proceeds to argue that the "appellate court's mandate was met when the *Krankel* inquiry hearing was held, and counsel was appointed. Thereafter, it was appointed counsel's decision as to how the claims should proceed. *Harkey*, 2025 IL App (4th) 230523, ¶ 72." *Infra* ¶ 69. The dissent's reasoning is flawed on multiple levels. The dissent cherry-picks language from *Harkey* and ignores the plethora of cases cited herein that describe the common law procedure that has developed for conducting *Krankel* inquiries. As already noted, "the *sole* issue to be resolved by a *Krankel* inquiry is whether the trial court should appoint new counsel for a defendant so that the new counsel can take whatever action (in counsel's professional judgment) that would be appropriate regarding the defendant's claim of ineffective assistance." (Emphasis in original.) *Harkey*, 2025 IL App (4th) 230523, ¶ 77. "That role is to investigate the defendant's *pro se* claims of ineffective assistance of trial counsel—not to pursue other claims of error, like those commonly raised in posttrial motions." *Harkey*, 2025 IL App (4th) 230523, ¶ 77. "After such a review, if new counsel concludes that, in new counsel's professional judgment, a claim that defendant's trial counsel was ineffective has merit, then new counsel should file a motion for a new trial (or a motion to withdraw the defendant's guilty plea) alleging defendant's trial counsel's ineffectiveness." *Harkey*, 2025 IL App (4th) 230523, ¶ 79. Once counsel is appointed, if a posttrial motion is filed, the second stage of the *Krankel* proceeding consists of an adversarial and evidentiary hearing on the defendant's claims of ineffective assistance of trial counsel. *Downs*, 2017 IL App (2d) 121156-C, ¶ 43. The defendant is represented by the newly appointed *Krankel*

21

counsel during this hearing. *Roddis*, 2020 IL 124352, ¶ 36. Allowing *Krankel* counsel to pursue whatever legal theories they can come up with and then deny the appeal by claiming invocation of the invited error doctrine leads to the absurd result as evidenced in this case, especially where the mandate pertained only to a remand for an "adequate *Krankel* inquiry."

¶ 52 The dissent's reliance on the invited error doctrine also fails where there is an ineffective assistance of counsel claim. "Claims of ineffective assistance of counsel are not precluded by the invited error doctrine." *People v. Drew*, 2024 IL App (5th) 240697, ¶ 31.

¶ 53 After all of its disagreements, the dissent agrees with the conclusion that *Krankel* counsel's performance "fell below the objective standard of reasonableness." *Infra* ¶ 80. In fact, the dissent agrees that "[i]t is also clear that defendant was entitled to a *Krankel* hearing once counsel was appointed." *Infra* ¶ 80. But the dissent finds that the defendant is not entitled to any relief, as he was not prejudiced by *Krankel* counsel's unreasonable performance.

¶ 54 The dissent's argument that, even with *Krankel* counsel's unreasonable performance, there was no prejudice on the merits, misses the mark. The circuit court determined, based upon the defendant's *pro se* allegations, that there was possible neglect of the trial proceedings. *Krankel* counsel was appointed to investigate, but *Krankel* counsel was ineffective. The record has not been fully developed yet to determine the nature and extent of the perceived neglect. That was the purpose of the *Krankel* remand. Nevertheless, the dissent believes it is now in a better position than the trial court and can assess the merits of the defendant's claims. We disagree and believe that once a proper posttrial motion is filed, the defendant is entitled to an evidentiary hearing on the merits of his contentions.

¶ 55 In light of the foregoing, we remand this case for the limited purpose of directing the circuit court to appoint new *Krankel* counsel, as the circuit court already determined possible neglect by

trial counsel at the initial *Krankel* inquiry. New *Krankel* counsel shall investigate defendant's *pro se* claims of ineffective assistance of trial counsel and present any nonfrivolous claims in a proper motion and represent the defendant at a second-stage *Krankel* hearing. If, however, after an investigation, new *Krankel* counsel cannot find a nonfrivolous allegation of ineffective assistance of trial counsel, then new *Krankel* counsel should move to withdraw on the basis that there are no nonfrivolous claims and, on the record, support the request to withdraw with a reasonably specific explanation of the facts and the law.

¶ 56    We do not need to consider at present the defendant's other arguments on appeal because we conclude that a new *Krankel* proceeding is required. *Bell*, 2018 IL App (4th) 151016, ¶ 37. ("Depending on the result of the *** *Krankel* inquiry, defendant' other claims may become moot."). We express no view on the merits of defendant's remaining arguments he has made on appeal. While we are "remanding for further proceedings on defendant's *pro se* claim of ineffective assistance of counsel," we retain jurisdiction over defendant's other claims. *Wilson*, 2019 IL App (4th) 180214, ¶ 26. If the defendant is not satisfied with the outcome of the proceedings on remand, he may pursue another appeal and raise any supplementary claims relating to the remand proceedings, and the State may have an opportunity to respond to those claims.

¶ 57                                III. CONCLUSION

¶ 58    We reverse the circuit court's dismissal of the defendant's postconviction petition and allow the defendant to withdraw the postconviction petition; we remand for the circuit court to comply with the mandate in *Wilhelm*, 2020 IL App (4th) 170008-U, in accordance with *Krankel*, 102 Ill. 2d 181, and its progeny, and to fully consider the defendant's *pro se* posttrial claim of ineffective assistance of counsel through the filing of a proper posttrial motion and evidentiary hearing, if necessary; and we direct the circuit court to appoint new *Krankel* counsel on remand.

23

¶ 59 Reversed and remanded with directions.

¶ 60 JUSTICE VAUGHAN, dissenting:

¶ 61 I respectfully dissent from my colleagues' decision. I disagree with their holding that the trial court failed to follow the appellate court's mandate and instead find the doctrine of invited error precludes the argument. I also disagree that prejudice was shown for defendant's ineffective assistance of counsel claim directed toward his appointed counsel on remand.

¶ 62 Defendant contends that the trial court erred in failing to proceed with a *Krankel* hearing on remand and instead allowed defense counsel to proceed with a postconviction petition. Despite defendant's claim to the contrary, the trial court conducted the *Krankel* inquiry as required by the appellate court's remand at the hearing held on January 22, 2021. During the *Krankel* inquiry hearing, the trial court reiterated defendant's prior complaints about defense counsel's failure to subpoena two witnesses to court and asked defendant if those remained his only complaints. Defendant said, "No. There's still more. There's more to it." Thereafter, defendant addressed a DCFS report, divorce pleadings, an order of protection, and the plea deal given to one of the witnesses. The court addressed each claim with defendant and later allowed defendant's trial counsel to address defendant's claims. Following the hearing, the court found "possible neglect" in the case and appointed Mr. Brown as counsel for defendant. The court stated it would grant Brown time to review the record. After over two and a half years of talking with defendant about the issues and interviewing witnesses, Mr. Brown filed an "amended petition for post-conviction relief."

¶ 63 Defendant now claims it was reversible error for the court to conduct postconviction proceedings rather than *Krankel* proceedings and argues that the postconviction proceedings went beyond the dictates of the appellate court mandate. His argument is based on the language in the

previous appellate court decision confirming the court would retain jurisdiction over defendant's undetermined claims and stated:

> "If defendant is not satisfied with the outcome of the proceedings on remand, he may again appeal and raise any supplementary claims relating to the remand proceedings, and the State may have an opportunity to respond to those claims." (Internal quotation marks omitted.) *Wilhelm*, 2020 IL App (4th) 170008-U, ¶ 18.

¶ 64    I disagree with defendant's interpretation of the appellate court's order. While I agree that a trial court is bound by the appellate court's mandate (see *People ex rel. Daley v. Schreier*, 92 Ill. 2d 271, 276 (1982)), the appellate court's decision specifically used the word "may" with regard to any appeal. See *People v. Reed*, 177 Ill. 2d 389, 393 (1997) (addressing the difference between "may" and "shall" and finding that "may" is generally regarded as indicating a permissive interpretation). While *Reed* was interpreting legislation (*id.*), the interpretation is equally applicable for interpreting contracts (see *Martinez v. Prestige Imports, Inc.*, 2024 IL App (2d) 240121, ¶ 23) or court orders. See *People v. Davit*, 366 Ill. App. 3d 522, 527 (2006) (addressing statutory construction principles to court order).

¶ 65    I interpret the appellate court's remand order as allowing defendant to appeal, but only if he was unsatisfied with the remand proceedings. Here, the *Krankel* inquiry proceeding did not produce an unsatisfactory result as the trial court found possible neglect of the case by defense counsel and appointed *Krankel* counsel. Thereafter, *Krankel* counsel investigated the validity of defendant's claims for two and a half years. After counsel's lengthy review, he filed an amended pleading titled as an amended postconviction petition addressing defendant's claim of ineffective assistance by trial counsel.

25

¶ 66 Defendant argues that the trial court was without jurisdiction to proceed with a postconviction act pleading, contending the trial court's action on remand was limited to a *Krankel* hearing. However, defendant misconstrues both the prior appellate court decision and the purpose of the *Krankel* inquiry. The prior decision language clarified that the remand was solely for a "*Krankel* inquiry" hearing; it specifically stated that it was not remanding for the appointment of counsel or a *Krankel* hearing. *Wilhelm*, 2020 IL App (4th) 170008-U, ¶ 16. Thereafter, the court retained its jurisdiction of the other claims on appeal and stated that if defendant was "not satisfied with the outcome of the proceedings on remand, he may again appeal and raise any supplementary claims relating to the remand proceedings, and the State may have an opportunity to respond to those claims." (Internal quotation marks omitted.) *Id.* ¶ 18.

¶ 67 Here, following the mandated *Krankel* inquiry hearing, the trial court appointed counsel, and I read nothing in the prior decision that limited appointed counsel from proceeding in a different manner once the initial *Krankel* inquiry was performed. As recently noted by the Fourth District Appellate Court, which decided the prior appeal, "the *only* issue to be decided at a *Krankel* inquiry is whether new counsel should be appointed." (Emphasis in original.) *People v. Harkey*, 2025 IL App (4th) 230523, ¶ 72; see also *People v. Patrick*, 2011 IL 111666, ¶ 39. "[T]here is no true 'second stage' to a *Krankel* inquiry because the *sole* issue to be resolved at a *Krankel* inquiry is whether new counsel should be appointed." (Emphasis in original.) *Harkey*, 2025 IL App (4th) 230523, ¶ 73. The *Krankel* inquiry can only result in "two possible outcomes." *Id.* ¶ 72. Those outcomes are either

"(1) the court appoints new counsel who should then conduct an independent evaluation of the defendant's ineffective assistance claims and take whatever action

26

counsel thinks would be appropriate or (2) the court does not appoint new counsel and the posttrial matters proceed as in any other case." *Id.*

¶ 68 Here, the former outcome occurred, and the trial court appointed new counsel. Thereafter, new counsel conducted an independent evaluation of defendant's claims of ineffective assistance of counsel and then filed a postconviction pleading setting forth the alleged claims of ineffective assistance of counsel. As noted by the record, defendant's appointed counsel spoke with defendant and possible witnesses to determine the viability of the claims and advised the court that not all of the claims were sufficient to present following counsel's scrutiny. This is exactly the duty for which counsel was appointed. *Id.*

¶ 69 "Under the doctrine of invited error, an accused may not request to proceed in one manner and then later contend on appeal that the course of action was in error." *People v. Carter*, 208 Ill. 2d 309, 319 (2003) (citing *People v. Villarreal*, 198 Ill. 2d 209, 227-28 (2001)). Here, contrary to defendant's argument, the appellate court's mandate was met when the *Krankel* inquiry hearing was held, and counsel was appointed. Thereafter, it was appointed counsel's decision as to how the claims should proceed. *Harkey*, 2025 IL App (4th) 230523, ¶ 72. Therefore, I find that defendant is barred by the doctrine of invited error from contending on appeal that the trial court erred by allowing defendant to proceed with a postconviction pleading.

¶ 70 However, even if the invited error doctrine was inapplicable, I disagree with appellate counsel's claim that the trial court's decision in this case was void because it exceeded the mandate order. "[O]nly the most fundamental defects warrant declaring a judgment void." *People v. Price*, 2016 IL 118613, ¶ 30. Our supreme court has only recognized two circumstances that result in a void judgment: "(1) where the judgment was entered by a court that lacked personal or subject-

27

matter jurisdiction" and "(2) where the judgment was based on a statute that is facially unconstitutional and void *ab initio*." *Id.* ¶ 31.

¶ 71 While defendant does not specify which option occurred that should void the judgment, his citation to *People ex rel. Daley v. Schreier*, 92 Ill. 2d 271, 276-77 (1982), implies a lack of subject matter jurisdiction. *Schreier* stated, "Thus, when a reviewing court issues a mandate, it vests the trial court with jurisdiction to take only such action as conforms to that mandate. [Citations.]" *Id.* at 276. "Any other order issued by the trial court is outside the scope of its authority and void for lack of jurisdiction." *Id.* at 276-77.

¶ 72 The procedural history and facts of *Schreier* must be considered. In *Schreier*, the defendants were indicted for "knowingly delivering more than 30 grams of a substance containing cocaine." *Id.* at 273. The defendants were found guilty "in the 'manner and form' charged in the indictment." *Id.* Thereafter, defendants filed a posttrial motion alleging, *inter alia*, "that the statutory classification of cocaine as a narcotic was unconstitutional" and they could not be sentenced under Class X felony guidelines which required a minimum six-year sentence. *Id.* The court found the statutory classification unconstitutional and sentenced defendants as Class 3 felons with six months' periodic imprisonment and a $2,500 fine. *Id.* at 273-74. The State filed a direct appeal based on the finding of unconstitutionality and the Illinois Supreme Court issued a supervisory order reversing the trial court's finding of unconstitutionality and its prior sentences. *Id.* at 274. The last sentence of the supervisory order stated, "The cause is remanded to the circuit court with directions to resentence defendants in accordance with law." *Id.*

¶ 73 On remand, the defendants filed another motion for a new trial, which the trial court granted. *Id.* The case was transferred to a new judge and the State petitioned for leave to appeal

28

and requested the issuance of a writ of *mandamus*. *Id.* at 275. The issue was whether the trial court had jurisdiction to grant the motion for a new trial when the remand was for resentencing only. *Id.*

¶ 74   The supreme court held that its remand order was limited to resentencing the defendants and mandated that they be sentenced as Class X felons. *Id.* at 276. It further noted that "[n]o other action on the part of [the trial court] was required or authorized" in its decision. *Id.* The court stated that "when a reviewing court issues a mandate, it vests the trial court with jurisdiction to take only such action as conforms to that mandate." *Id.* "Any other order issued by the trial court is outside the scope of its authority and void for lack of jurisdiction." *Id.* at 276-77. The Illinois Supreme Court found that the trial court's order "failed to comply with our mandate, and for that reason he lacked jurisdiction to enter it." *Id.* at 279. The court ordered that a writ of *mandamus* be issued directing the trial court "to comply with our prior mandate and resentence defendants as Class X felons." *Id.*

¶ 75   According to *Schreier*, the mandate language is the relevant focus. The language in *Wilhelm*'s remand mandate required the trial court to hold a *Krankel* inquiry hearing—which it did—and thereafter, appointed counsel after finding some of the claims had merit. The fact that appointed counsel ultimately proceeded with a postconviction petition after over two years of investigating claims is irrelevant because the mandate did not address what counsel should file if meritorious claims were found following counsel's investigation. Instead, the remainder of *Wilhelm* retained jurisdiction to address defendant's other claims on appeal and stated that, if defendant was unsatisfied "with the outcome of the proceedings on remand, he may again appeal and raise any supplementary claims relating to the remand proceedings." (Internal quotation marks omitted.) *Wilhelm*, 2020 IL App (4th) 170008-U, ¶ 18.

¶ 76    That is exactly what occurred and defendant's dissatisfaction with the remand proceedings was a new issue raised in this appeal. However, as shown in *Harkey*, it is appointed counsel's duty to investigate the claims "and take whatever action counsel thinks would be appropriate." *Harkey*, 2025 IL App (4th) 230523, ¶ 72. The role for appointed counsel is "not limited to the claims that defendant raised *pro se* regarding his trial counsel's alleged ineffectiveness." *Id.* ¶ 78. "[C]ounsel should also consult with the defendant and review the entirety of the trial court proceedings *** that resulted in the defendant's conviction." *Id.* After the review, if the appointed counsel "concludes that, in new counsel's professional judgment, a claim that defendant's trial counsel was ineffective has merit, then new counsel should file a motion for a new trial *** alleging defendant's trial counsel's ineffectiveness." *Id.* ¶ 79. Conversely, if, counsel determines that defendant's claims have no merit, counsel should file a motion to withdraw. *Id.* ¶ 80.

¶ 77    In the case at bar, counsel advanced what he believed were defendant's meritorious claims and, instead of filing a motion for a new trial as suggested in *Harkey*, counsel filed a postconviction petition. Appointed counsel limited his role to investigation of the *pro se* claims of ineffective assistance of counsel and did not pursue other claims of error like those commonly raised in posttrial motions. See *id.* ¶ 77. As shown above, the appellate court mandate was solely for a *Krankel* inquiry, which occurred as evidenced by the appointment of counsel. The fact that the case went "sideways" as claimed by defendant is of no relevance, because once counsel was appointed, the appellate court's mandate was fulfilled and thereafter it was counsel's duty to investigate defendant's claims of ineffective assistance of counsel, and decide in his professional opinion, how best to proceed with the claims. *Id.* As such, even if invited error was inapplicable, I cannot find that the trial court exceeded the scope of its review on remand, especially where, as here, the pleading that was filed was limited to defendant's claims of ineffective assistance of trial

30

counsel after a full investigation of the claims by appointed counsel. Indeed, if counsel's amended petition had been entitled "amended *Krankel* petition" instead of "amended postconviction petition" and contained the same claims, no error could be found.

¶ 78    "[I]t is well settled that a pleading's substance and not its title determines its character." *Wabash County v. Illinois Municipal Retirement Fund*, 408 Ill. App. 3d 924, 932 (2011) (citing *Savage v. Mui Pho*, 312 Ill. App. 3d 553, 559 (2000) ("the character of a motion should be determined from its content, and a court is not bound by the title of a document given by a party")). Therefore, I cannot find that the trial court exceeded the scope of the mandate when it fulfilled the mandate as directed and it was only appointed counsel's filing of a mistitled petition that altered the case on remand. In reality, if the pleading had been properly titled, no error would be evident.

¶ 79    Defendant also argues, in the alternative, that if invited error is found, this court should find that posttrial counsel provided ineffective assistance. Claims of ineffective assistance are considered under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 698 (1984). *People v. Albanese*, 104 Ill. 2d 504, 526-27 (1984). The *Strickland* standard requires a defendant to demonstrate that counsel's performance was deficient and suffered prejudice due to counsel's errors. *Strickland*, 466 U.S. at 687. The failure to establish either prong of *Strickland* precludes a finding of ineffectiveness. *People v. Easley*, 192 Ill. 2d 307, 318 (2000).

¶ 80    Deficient performance requires a defendant to demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. Defendant's claim is based on appointed counsel proceeding with a postconviction petition instead of a *Krankel* hearing. There is no dispute that *Krankel* proceedings are different from Post-Conviction Hearing Act proceedings. *People v. Patrick*, 2011 IL 111666, ¶ 39. It is also clear that defendant was entitled to a *Krankel* hearing once counsel was appointed. While it took appointed counsel over

31

two years to determine which issues were worth addressing related to the performance of defense counsel, it is confounding as to why appointed counsel proceeded with a postconviction pleading instead of a *Krankel* hearing or an amended *Krankel* petition once he determined which issues were supported by sufficient evidence to proceed. As such, I agree with defendant's claim and the majority's conclusion that appointed counsel's performance fell below the objective standard of reasonableness.

¶ 81　However, I disagree with the defendant's claim that he was prejudiced by appointed counsel's action. Defendant's prejudice argument claimed that the current filing would make it more difficult to proceed with future postconviction proceedings. As such, the argument was couched in speculation related to a potential future and unfiled pleading. It is my position that the basis of defendant's prejudice argument, even if true, is not a valid basis for a finding of prejudice under *Strickland*.

¶ 82　A defendant claiming ineffective assistance of counsel "establishes prejudice by showing that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different." *People v. Houston*, 229 Ill. 2d 1, 4 (2008) (citing *People v. Peeples*, 205 Ill. 2d 480, 513 (2002)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (citing *Peeples*, 205 Ill. 2d at 513). Here, defendant was required to show that if counsel had filed an amended *Krankel* petition, or simply proceeded to a *Krankel* hearing, the outcome of that hearing would have been different. I do not believe this can be shown.

¶ 83　The first claims advanced by appointed counsel were based on pleadings filed in a dissolution proceeding and an order of protection. As to those claims, as noted by the trial court, the periods of time related to the dissolution proceedings and the order of protection did not

32

encompass the entire period alleged by the State in the charging document. Therefore, even if trial counsel had testified at a *Krankel* hearing that he should have placed those documents in evidence, a different outcome is unforeseeable. As such, I cannot find a reasonable probability of a different outcome for this claim.

¶ 84　　Defendant's claim related J.D.'s plea deal would also have little to no effect on the outcome of the proceedings. While further inquiry by trial counsel as to the plea deal may have shown bias or undermined reliance on J.D.'s testimony, two other witnesses testified to defendant's acts of sexual deviancy during the same period.

¶ 85　　Finally, defendant's remaining claim asserted that trial counsel failed to keep defendant sufficiently apprised of the evidence and counsel's lack of preparation "could have also influenced" defendant's decision not to testify in his own defense. Despite this claim, and sitting through the trial, defendant failed to point to any specific piece of evidence that was not discussed by trial counsel prior to the trial or how such piece of evidence may have affected his decision to testify, or critically, how his testimony might have affected the outcome at trial.

¶ 86　　More importantly, the evidence against defendant was overwhelming. Even if trial counsel admitted all evidence supportive of defendant's allegations of ineffective assistance of counsel at an evidentiary *Krankel* hearing, the probability of a different outcome would remain unchanged. Each of the three victims testified as to the sexual acts defendant performed on them involuntarily as well as their fear of defendant's threats if they told anyone about the acts he was performing. Additionally, evidence pursuant to section 115-7.3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-7.3 (West 2016)) revealed substantially similar sexual acts and threats against victims living in defendant's household. Testimony from the police officers confirmed that additional incidents occurred later. Further, C.E.'s physical examination revealed findings

33

consistent with healed trauma from past sexual occurrences. Accordingly, it is my position that defendant cannot show prejudice related to his ineffective assistance of appointed counsel claim. Therefore, I would have denied defendant's claims of error and addressed the merits of defendant's other issues on appeal.

¶ 87    For the foregoing reasons, I dissent.